IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ERIE DIVISION

| | |
|---|---|
| NICHOLE HAWKINS,<br><br>Plaintiff<br><br>v.<br><br>OLIVER, et al,<br><br>Defendants | 1:23-CV-354-SPB-RAL<br><br>SUSAN PARADISE BAXTER<br>United States District Judge<br><br>RICHARD A. LANZILLO<br>Chief United States Magistrate Judge<br><br>Report and Recommendation on<br>Plaintiff's Second Amended<br>Complaint<br><br>ECF NO. 61 |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.   Recommendation

It is respectfully recommended that Plaintiff Nicole Hawkins' claims against the following Defendants be dismissed from this action, without prejudice, pursuant to 28 U.S.C. § 1915(e): Overmyer, Graves, Heckler, Boylan, Ace, Wetzel, Oliver, Wagner, John Doe (physician), Correctional Industries, the Federal Bureau of Investigation, the United States Postal Service, the DOC, the Medical Ethics License Board, the Psychiatry Ethics Board, and the Licensed Cosmetology Board.

It is further recommended that Hawkins' claims against the following be severed and dismissed, without prejudice, pursuant to Rule 20 of the Federal Rules

1

of Civil Procedure: Senz, Wiltanger, Webster, Shahada, Anderson, Obeng, Mahalski, and Rockwood.

Finally, it is recommended that Hawkins be permitted to proceed in this action with the deliberate indifference and retaliation claims against Brown, Sommosky, and Edwards set forth at pages 29-32, 65-66, and 72 of her Second Amended Complaint [ECF No. 61], assuming she complies with the Court's instruction to file an amended complaint providing more factual detail as to those claims.

II. Report

A. Procedural background

Plaintiff Nichole Hawkins, an inmate in the custody of the Pennsylvania Department of Corrections, initiated this action by filing a motion for leave to proceed in forma pauperis. ECF No. 1. That motion was granted on July 29, 2024. ECF No. 37. Hawkins filed an Amended Complaint on August 14, 2014, ECF No. 52, and a Second Amended Complaint – the currently operative pleading – on September 27, 2024. ECF No. 61.

B. Standards

Having been granted leave to proceed in forma pauperis, Plaintiff is subject to the screening provisions in 28 U.S.C. § 1915(e).[1] Among other things, that statute requires the Court to dismiss any action in which the Court determines that the action is "frivolous or malicious; fails to state a claim upon which relief may be

---

[1] Because Plaintiff is proceeding *pro se*, his allegations, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). Moreover, under the liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997).

2

granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2); *Muchler v. Greenwald*, 624 Fed. Appx. 794, 796-97 (3d Cir. 2015). A frivolous complaint is one which is either based upon an indisputably meritless legal theory (such as when a defendant enjoys immunity from suit) or based upon factual contentions which are clearly baseless (such as when the factual scenario described is fanciful or delusional). *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The determination as to whether a complaint fails to state a claim upon which relief may be granted is governed by the same standard applicable to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *D'Agostino v. CECOM RDEC*, 436 Fed. Appx. 70, 72 (3d Cir. 2011) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

Additionally, Federal Rule of Civil Procedure 20(a)(2) permits the permissive joinder of parties in an action where the claims arise from the "same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." However, the policy underlying Rule 20 – the promotion of trial convenience and efficiency – "is not a license to join unrelated claims and defendants in one lawsuit." *Brodie v. Thompson*, 2024 WL 759016, at *3 (W.D. Pa. Jan. 22, 2024) (quoting *Williams v. Clark*, 2018 WL 5983380, at *2 (W.D. Pa. Nov. 14, 2018) (additional quotation and quoting source omitted)). Rather, "it is well-settled that a litigant may not 'raise unrelated claims in an effort to avoid the statutory filing fee required to initiate a new lawsuit.'" *Id.* (quoting *Sledge v. Erie County Prison*, 2021 WL 2073798, at *7 (W.D. Pa. May 24, 2021)).

Indeed, Rule 20 "takes on additional importance" in cases brought by pro se inmates because "a prisoner-plaintiff who is permitted to combine separate, independent claims into one complaint is able to circumvent the PLRA's filing fee requirements and [its] potential 'three strikes' limitation." *Id.* (quoting sources omitted).

C. Factual Background

Hawkins is a prisoner in the custody of the Pennsylvania Department of Corrections (DOC). At all relevant times, she was incarcerated at SCI-Cambridge Springs. ECF No. 61 at p. 6. Rather than present her claims in single, coherent narrative, Hawkins has structured her pleading in the form of twenty-nine separate micro-pleadings, each addressing a single Defendant. Many contain minimal factual allegations, and several are completely incoherent. She provides few dates and times and often cross-references claims between multiple defendants in a circular manner that makes it difficult to ascertain the underlying conduct. Critically, there does not appear to be a common thread or core issue woven throughout her allegations. Nevertheless, the Court will attempt to parse through her allegations and determine whether any actionable misconduct is alleged.

At some unidentified time, Defendant Brown, a psychologist, engaged in "unethical practices" and "violated her professional oath" while treating Hawkins. *Id.* at pp. 29-30. According to Hawkins, she "requested professional assistance and therapeutic counseling" from Brown in connection with a prior sexual assault but Brown "withheld treatment, refusing to see the Plaintiff." *Id.* at p. 30. She also coordinated with Hawkins' unit manager, Senz, to "chang[e] the Plaintiff's mental

4

health record to make the Plaintiff appear violent against authority and peers and a danger to society, by changing [her] diagnosis to make [her] 'unfit' to renter society." *Id.* at p. 32.

In April 2024, Hawkins was placed in a therapy program for victims of sexual abuse under the leadership of another psychologist, Sommosky. *Id.* at p. 65. Because Hawkins initially found the program enormously beneficial, she began to view the program as a "safe space" where she could confidentially share traumatic issues. *Id.* at pp. 65-66. At some point during the third month of the program, however, she shared one of her "deep rooted triggers" and began to experience flashbacks and trauma related to her sexual assault in prison and childhood abuse. *Id.* at p. 66. Rather than treat that information with sensitivity, the program performed "a skit" at a community gathering that triggered her trauma and caused her to suffer a psychotic break. *Id.* It is unclear whether Sommosky was directly involved in the skit or merely oversaw the program.[2] After Hawkins filed a grievance, Sommosky's boyfriend, Edwards, retaliated against Hawkins by cancelling her medical appointment with an oncologist. *Id.* at p. 72.

Another medical provider, Anderson, "intentionally imposed . . . unethical practices . . . upon the Plaintiff as the Plaintiff was lied to in a face to face conversation with Mr. Anderson regarding the Plaintiff (needing surgery)." *Id.* at p. 83. No other details are provided.

A prison mailroom employee, Wiltanger, is accused of "collectively viewing

---

[2] It is also unclear whether the skit directly referenced Hawkins' trauma.

photos of [Hawkins'] family" and "having conversations [with other DOC employees] about [Hawkins'] . . . children and . . . family." *Id.* at p. 49. Hawkins also accuses Wiltanger of refusing to let her have those same photos. *Id.* at p. 50. She maintains that this amounts to mental torture. *Id.* No date is provided.

In December 2021, corrections officers Webster and Shahada confiscated Hawkins' religious hijab, $700 worth of her personal property, and broke the screen on her tablet during a cell search. *Id.* at pp. 52, 56-57. They refused to return the confiscated property despite being ordered to do so. *Id.* at p. 53. When Hawkins complained about the missing property, Shahada told her to shut up. *Id.* at p. 56.

Mahalski, the prison's former cosmetology teacher, allegedly refused to provide hair services to Hawkins for several years. *Id.* at p. 104. She also is accused of damaging Hawkins' hair by "using relaxer and hair dye that was (outdated by 7 years)." *Id.* at p. 104. A Physician's Assistant, Rockwood, purported to treat the chemical burn caused by Mahalski's use of outdated hair products but instead "injected a foreign dose of poison into [her] scalp." *Id.* at p. 107.[3]

An entity identified as "Correctional Industries" is accused of racial and ethnic discrimination based on a "refusal to provide products to allow all ethnic races the opportunity to have products that are not harmful to cause damage to their skin or hair (texture)." *Id.* at p. 87. From the context of Hawkins' allegations, it appears that Correctional Industries supplies items for sale in the prison's commissary. *Id.* at p. 88.

---

[3] A review of Hawkins' grievances indicates that she was receiving Kenalong injunctions due to hair loss. ECF No. 61-1 at p. 16.

Former Superintendent Oliver is accused of "direct supervisory liability" based on an incident that occurred in 2018 after Hawkins took a polygraph test. *Id.* at p. 17. Oliver apparently ordered a prison counselor, identified as Hull, to remove Hawkins from her caseload "as a punishment and retaliation regarding the contents of the polygraph test." *Id.* at p. 18.

In 2010 and 2020, Hawkins informed Senz that she had a "no air-conditioning order" in her file because cold air and bad weather caused her pain. *Id.* at p. 38. Hawkins accuses Senz of engaging in "intentional infliction of emotional distress" and "direct supervisory liability" by ignoring the no air-conditioning order in Hawkins' file. *Id.* at p. 37; ECF No. 61-1 at pp. 1, 12. Dr. Obeng later removed the no air-conditioning order after deeming it medically unnecessary. ECF No. 61-1 at p. 17.[4]

Several additional claims involve individuals who do not appear to be state actors. At an unknown time, Hawkins was taken to an outside hospital for a colonoscopy. *Id.* at p. 40. The physician who performed her procedure engaged in "medical malpractice" in an undescribed manner. *Id.* Based on this malpractice, Hawkins "began experiencing numerous physical problems" after being returned from the hospital "which couldn't be explained by the medical staff [at SCI-Cambridge Springs]." *Id.*

A physician at UPMC Hospital, identified as Dr. Wagner, engaged in unspecified "medical malpractice, HIPPA law violations, constitutional violations,

---

[4] Obeng is also accused of committing unspecified "violations against the Plaintiff." ECF No. 61 at p. 81. No specifics are provided other than that Obeng engaged in "unethical practices" and "personally violated [the] HIPPA law confidentiality clause., and caused the Plaintiff a very large amount of psychological and emotional distress." *Id.* at p. 80.

7

ethical oath violations, [and] Eighth Amendment violations" in connection with an unidentified surgery. *Id.* at p. 85. No other facts are provided.

Hawkins' remaining claims are all premised entirely on supervisory liability. Former Superintendent Overmyer is accused of failing "to reprimand all of the defendants for their violations against the Plaintiff in her (authoritive position) thus making [her] directly liable and personally involved." ECF No. 61 at p. 25. Superintendent Graves neglected to investigate or review video footage of a "psychological disturbance" that occurred while Hawkins was receiving care in the prison's sexual abuse program. *Id.* at p. 60. Principle Heckler refused to issue a reprimand despite being informed that Mahalski was using out-of-date hair products and denying Hawkins cosmetology services. *Id.* at p. 54. Grievance Coordinator Boylan engaged in "illegal practices in handling grievance response[s]" and failed to adequately investigate grievances. *Id.* at p. 58. Security Captain Ace denied Hawkins' grievances against Webster, Shahada, Senz, and Mahalski, refused to allow her to "write a statement" concerning misconduct by Senz, and "refus[ed] to reprimand the actions of Ms. Senz, Ms. Shahada, [and] Ms. Webster" despite being in a "supervisory position" where he could have "provided the Plaintiff with relief in all of the incidents." *Id.* at pp. 78-79. Finally, Secretary Wetzel failed to directly intervene or investigate Hawkins' claims despite being "the boss of each employee and Director over all the Prisons in Pennsylvania." *Id.* at p. 35.

In addition to the individual supervisory Defendants, Hawkins has also sued several agencies, organizations, and regulatory bodies based on their perceived

supervisory and regulatory authority. She identifies the DOC as being responsible for unspecified "constitutional violations and clinical violations ethically suffered by the Plaintiff while in [DOC] custody . . . thus making the [DOC] civilly liable." *Id.* at p. 15. The FBI and deceased former director J. Edgar Hoover are accused of "refusing to do a full on investigation into (all) of the Lycoming County Court Judges who refused to (properly investigate) all of the evidence and facts" surrounding Hawkins' accusation of sexual assault by a state employee at an unidentified time. *Id.* at pp. 45-47. Hawkins maintains that the "Medical Ethics License Board," "Psychiatry Ethics Board," and "Licensed Cosmetology Board" are each vicariously responsible for any injuries caused by the licensed physicians, psychologists, and cosmetologists who provided services to Hawkins. *Id.* at pp. 91-99, 101-102, 105-106. Finally, Hawkins contends, apropos of nothing, that the United States Postal Service is "fully responsible for the constitutional violations and the governmental oath of anyone working [as] a representative of the U.S. Postal Service on behalf of (mail delivery)." *Id.* at p. 100.

   D. Analysis

      1. Screening pursuant to § 1915(e)

Hawkins asserts dozens of causes of action throughout her pleading, many of which do not exist as independent grounds for relief.[5] Construing her allegations liberally, Hawkins appears to be asserting First and Eighth Amendment claims

---

[5] For example, she asserts claims against the DOC for "supervisory acquiense, direct supervisory liability, intentional infliction, discrimination, bias, prejudice, ethnic discrimination, retaliation, negligence, physical and psychological abuse and intentional mental anguish, [and] Eighth Amendment/Cruel and Unusual Punishment." ECF No. 61 at p. 15.

9

pursuant to 42 U.S.C. § 1983 and state tort law claims for intentional infliction of emotional distress and medical malpractice. She seeks $465,000,000,000 in damages against each Defendant.

As discussed below, many of her claims are non-starters. Additionally, many of the individuals and entities she has identified as Defendants cannot be sued under § 1983 or are entitled to immunity. It is recommended that the following be removed from this action based on the Court's authority to screen *in forma pauperis* pleadings.

   a. Personal involvement

Hawkins attempts to hold a host of individuals and entities liable under § 1983 for the alleged misconduct of others based on their supervisory roles in the DOC prison system or other state agencies. None of these allegations is sufficient to state a claim.

It is axiomatic that a § 1983 plaintiff "must show that each and every defendant was 'personal[ly] involve[d]' in depriving him of his rights." *Kirk v. Roan*, 2006 WL 2645154, at *3 (M.D. Pa. 2006) (quoting *Evancho v. Fischer*, 423 F.3d 347, 353 (3d Cir. 2006)). This means that each defendant must have played an "affirmative part" in the complained-of misconduct. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit ... [a]bsent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); *Oliver v. Beard*, 358 Fed. Appx. 297, 300 (3d Cir. 2009). In the absence of specific allegations that a defendant played a role in depriving the plaintiff of a constitutional right, dismissal is appropriate. *See, e.g., Mearin v. Swartz*, 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013)

(dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain defendants had played an affirmative part in the alleged Eighth Amendment violation).

These principles apply with equal force where the defendants are supervising prison officials. *See, e.g., Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) (noting that liability for supervisory officials must still be based on "personal involvement in the alleged wrongs"); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) ("[L]iability cannot be predicated solely on the operation of *respondeat superior*."). Although a supervisor cannot encourage constitutional violations, "a supervising public official has [no] affirmative constitutional duty to supervise and discipline so as to prevent violations of constitutional rights by his or her subordinates." *Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986); *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990). Moreover, it is "well established that the filing of a grievance is not sufficient to show the actual knowledge necessary for a defendant to be found personally involved in the alleged unlawful conduct." *Mearin v. Swartz*, 951 F.Supp.2d 776, 782 (W.D. Pa. 2013). *See also Mincy v. Chmielsewski*, 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."). Rather, a supervisor-defendant may only be liable for unconstitutional acts undertaken by subordinates if the supervisor either: (1) with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm; or (2) participated

11

in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

In the instant case, Hawkins' only factual averments concerning Overmyer, Graves, Heckler, Boylan, Ace, Wetzel, and Oliver (collectively, the "Supervisory Defendants") relate to their failure to take corrective action when allegedly informed of misconduct by other actors. The specific allegations against the Supervisory Defendants include failing to uphold grievances, refusing to investigate accusations of misconduct, and declining to issue reprimands to wrongdoers. It is apparent from these allegations that Hawkins is attempting to hold these individuals responsible for the unconstitutional actions of other individuals based entirely upon their supervisory role in the prison system and their response to her grievances or other informal complaints. As described above, this type of averment is insufficient to establish personal involvement in the deprivation of a constitutional right. *See, e.g., Mincy v. Chmielsewski,* 508 Fed. Appx. 99, 104 (3d Cir. 2013) ("[A]n officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement."); *Kloss v. SCI-Albion*, 2018 WL 4609144, at *4 (W.D. Pa. Aug. 15, 2018) (allegation that supervisory defendant was "made aware of several issues of the plaintiff's and . . . failed to help him" is insufficient to state a claim for reliefs) participation in an administrative appeal process); *Rogers v. United States*, 696 F.Supp.2d 472, 488 (W.D. Pa. 2010) ("If a grievance official's only involvement is

12

investigating and/or ruling on an inmate's grievance after the incident giving rise to the grievance has already occurred, there is no personal involvement on the part of that official."). The Supervisory Defendants should be dismissed from this action, with prejudice.[6]

      b. Section 1983's "Person" Requirement

A second deficiency in Hawkins' pleading stems from § 1983's requirement that a viable defendant must be a "person" within the meaning of the statute. To prevail on a § 1983 claim, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996) (quoting source omitted). *See also* 42 U.S.C. § 1983. It is well-settled, however, that neither a state nor its agencies are considered a "person" as that term is defined under the statute. *Hafer v. Melo*, 502 U.S. 21, 25-27, (1991). The DOC and the parties identified as the "Medical Ethics License Board," "Psychiatry Ethics Board," and "Licensed Cosmetology Board"[7] are each Commonwealth agencies and, as such, cannot be sued under § 1983.[8] *See, e.g., Ceasar*

---

[6] To the extent that Hawkins asserts an intentional infliction of emotional distress (IIED) claim against the Supervisory Defendants, she has failed to allege conduct that was "so extreme and outrageous as to go beyond all possible bounds of decency [and] to be regarded as atrocious and utterly intolerable in a civilized community," as would be required to state a claim. *Zimmerman v. Schaeffer*, 654 F.Supp.2d 226, 256-57 (M.D. Pa. Aug. 17, 2009). In addition to being largely conclusory, her allegations that Defendants failed to investigate and resolve her grievances to her satisfaction fall well short of the requisite standard for an IIED claim under Pennsylvania law.

[7] Hawkins appears to be referring to the Pennsylvania State Board of Medicine, State Board of Psychology, and State Board of Cosmetology.

[8] As an independent basis for dismissal, each of these Defendants is also immune from suit for monetary damages under the Eleventh Amendment to the United States Constitution. *See Lavia v. Penn. Dept. of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (finding that the DOC "shares in the Commonwealth's Eleventh Amendment immunity"); *Glunk v. Pennsylvania State Board of Medicine*, 687 Fed. Appx. 196, 203 (3d Cir. 2017) (State Board of Medicine is "immune from a suit for money damages under the Eleventh Amendment").

13

*v. Penn. Dept. of Corr.*, 2020 WL 2092420, at *3 (W.D. Pa. Apr. 15, 2020) (DOC is not a "person" amenable to suit under § 1983); *Lloyd v. Pennsylvania*, 2025 WL 2447795 (E.D. Aug. 25, 2025) (state licensing boards are not "persons" under § 1983). Consequently, the DOC, the Medical Ethics License Board, the Psychiatry Ethics Board, and the Licensed Cosmetology Board should be dismissed from this action, with prejudice.

      c. State actor requirement

Another requirement of a viable § 1983 claim is that the alleged constitutional violation must be attributable to a state actor. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (emphasis added). Generally, anyone whose conduct is "fairly attributed to the state" can be sued as a state actor under § 1983. *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). For liability to attach, the state actor must have "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Harvey v. Plains Twp. Police Dept.*, 635 F.3d 606, 609 (3d Cir. 2011) (quoting *Abbott v. Latshaw*, 164 F.3d 141, 146 (3d Cir. 1998)). Conversely, "private actors do not act under color of state law [and] thus are not liable under Section 1983." *Gerhart v. Energy Transfer Partners, L.P.*, 2018 WL 6589586, at *9 (M.D. Pa. Dec. 14, 2018) (quoting *Luck v. Mount Airy #1, LLC*, 901 F.Supp.2d 547, 560 (M.D. Pa. 2012)).

It is evident from the complaint and the allegations therein that Dr. Wagner, a physician at UPMC hospital, and the unidentified John Doe doctor who performed Hawkins' colonoscopy at an outside hospital are private medical professionals rather

than state actors. As such, Plaintiff's § 1983 claims against these private actors must be dismissed, with prejudice, for failure to state a claim. *See, e.g., Massey v. Crady*, 2018 WL 4328002, at *6 (W.D. Pa. Aug. 8, 2018) ("Private citizens, such as [defendants] are not state actors, and therefore . . . any § 1983 claims against [them] should be dismissed."); *Little v. Hammond*, 2016 WL 7324593, at *4 (W.D. Pa. Dec. 16, 2016) (same).

The same is true of Correctional Industries, a private corporation that supplies products for sale in the prison commissary. Courts have widely recognized that "vendors . . . who sell products to prisoners, are not acting under color of state law." *Berry v. Sellers*, 2023 WL 2647089, at *2 (E.D. Pa. Mar. 27, 2023) (collecting cases). *See also Butler v. Wetzel*, 2024 WL 268554, at *2 (W.D. Pa. Jan. 2, 2024) (dismissing § 1983 claim against prison vendor because "a private corporation" does not satisfy the state actor requirement). Correctional Industries should be dismissed, with prejudice.

d. Federal defendants

Hawkins has also sued the FBI and the United States Postal Service (USPS), although she has failed to provide a coherent factual narrative to support either claim. Because the FBI and USPS are federal agencies rather than state actors, the Court construes these allegations as an attempt to assert a claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 399 (1971).[9]

---

[9] Although Congress established a damages remedy under 42 U.S.C. § 1983 against state officials for violations of the federal constitution, it did not create an analogous statute for damages against federal officials. In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, however, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).

15

It is well-settled, however, that the doctrine of sovereign immunity precludes *Bivens* claims against federal agencies such as the FBI and the USPS. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit."); *Keo v. Federal Bureau of Investigation*, 2025 WL 4069770, at *3 (M.D. Pa. Oct. 31, 2025) (sovereign immunity precludes *Bivens* action against the FBI); *Goldstein v. United States Postmaster General*, 2022 WL 2467565, at *1 (E.D. Pa. July 6, 2022) (USPS "enjoys sovereign immunity absent a specific waiver"). Accordingly, the FBI and USPS should be dismissed from this action, with prejudice.

    e. Summary

For the reasons described above, the following Defendants should be dismissed from this action, with prejudice, pursuant to § 1915(e)(2): Overmyer, Graves, Heckler, Boylan, Ace, Wetzel, Oliver, Wagner, John Doe (physician), Correctional Industries, the Federal Bureau of Investigation, the United States Postal Service, the DOC, the Medical Ethics License Board, the Psychiatry Ethics Board, and the Licensed Cosmetology Board.

    2. Federal Rule of Civil Procedure 20(a)(2)

Having pared this action down considerably, the Court must next consider whether any of Hawkins' remaining factual allegations give rise to a plausible entitlement to relief. *See* 28 U.S.C. § 1915(e)(2). Before doing so, however, the Court notes that Hawkins is attempting to join "disparate and unrelated claims against

numerous different defendants" in violation of Federal Rule of Civil Procedure 20(a)(2). Those claims include the following:

- Brown withheld therapeutic counseling and refused to provide psychiatric treatment after Hawkins was sexually assaulted at another institution. [ECF No. 61 at pp. 29-32]

- Hawkins was traumatized by an offensive skit performed after she shared sensitive information concerning her personal trauma during a therapy program overseen by Sommosky. [*Id.* at pp. 65-66]. Sommosky's boyfriend, Edwards, then cancelled Hawkins' medical appointment with an oncologist after she complained about Sommosky. [*Id.* at p. 72].

- Senz placed Hawkins in an air-conditioned cell despite a "no air-conditioning" order in Hawkins' medical file. [*Id.* at pp. 37-38]

- Wiltanger viewed photos of Hawkins' family that arrived in the mail, shared them with other prison employees, and refused to let Hawkins have them. [*Id.* ¶¶ 121-24]

- Webster and Shahada confiscated several items of Hawkins' personal property and refused to return them. [*Id.* at pp. 52-57]

- Medical providers Anderson and Obeng provided inadequate medical treatment in some manner. These claims are sparsely articulated and mostly incomprehensible. [*Id.* at pp. 80-84.]

- Mahalski refused to provide cosmetology and hair services to Hawkins and damaged her hair by using outdated hair products. [*Id.* at p. 104]

- PA Rockwood mistreated a chemical burn on Hawkins' scalp by injecting her with poison. [*Id.* at p. 107]

Most of these claims are conclusory, poorly articulated, and short on factual detail. More critically, there is no discernable nexus between most of these discrete and unrelated claims. As courts have often noted, a plaintiff cannot circumvent the Prison Litigation Reform Act by filing one lawsuit alleging every perceived wrong by dozens of DOC officials over a lengthy timeframe. *McKee v. Department of Corrections*, 2024

WL 711615, at *3 (M.D. Pa. Feb. 21, 2024); *Brodie v. Tompson*, 2024 WL 759016, at *3 (W.D. Pa. Jan. 22, 2024). Because Hawkins' claims do not arise out of the "same transaction, occurrence, or series of transactions and occurrences" or share a "question of law or fact common to all defendants," they cannot be permissively joined together in a single action. Fed. R. Civ. P. 20(a)(2)(B); *McKee*, 2024 WL 711615 at *3. *See also Washington v. Gilmore*, 2018 WL 3913453, at *2–3 (W.D. Pa. June 22, 2018) ("Contrary to Rule 20, Plaintiff's Complaint includes an array of unrelated claims against various Commonwealth Defendants for events that allegedly occurred over the course of seven months in 2017."). The appropriate remedy, under such circumstances, is to "add or drop a party or sever any claims." *Brodie*, 2024 WL 759016, at *3. *See also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party"); *Kokinda v. Pennsylvania Dep't of Corr.*, 663 Fed. Appx. 156, 159 (3d Cir. 2016) (affirming severance of unrelated claims against discrete defendants). That course is recommended here.

As far as the Court can tell, the heart of Hawkins' pleading – or, at least, the set of allegations most likely to give rise to a plausible claim for relief – concerns the psychiatric and therapeutic care that Hawkins received from Brown and Sommosky after she was sexually assaulted and the retaliation she experienced from Edwards after complaining about the same. Those claims, outlined at pages 29-32, 65-66, and 72, should be permitted to proceed at the current case number. However, given the paucity of specific factual detail supporting her allegations, Hawkins should be

18

directed to file an amended complaint articulating these claims in greater detail. This means that Hawkins should be directed to identify the rights under the Constitution, laws, or treaties of the United States that have been violated, name and identify the **<u>individual</u> <u>officials</u>** responsible for those alleged violations, and provide **<u>specific factual details</u>** as to how **<u>each individual</u>** was involved in the deprivation of his civil rights. She should be as specific as possible about the particulars of the event and include references to relevant **<u>dates, times, and locations</u>**. Hawkins should also explain how she has been injured and what she is seeking by way of relief.

As to her remaining claims against Senz, Wiltanger, Webster, Shahada, Anderson, Obeng, Mahalski, and Rockwood, each should be dismissed, without prejudice, pursuant to Fed. R. Civ. P. 20(a)(2). If Hawkins wishes to pursue those unrelated claims in federal court, she must file separate § 1983 actions and pay the filing fee for each case.

III.  Conclusion

Consistent with the foregoing, the Court recommends the following:

1. Hawkins' claims against Overmyer, Graves, Heckler, Boylan, Ace, Wetzel, Oliver, Wagner, John Doe (physician), Correctional Industries, the Federal Bureau of Investigation, the United States Postal Service, the DOC, the Medical Ethics License Board, the Psychiatry Ethics Board, and the Licensed Cosmetology Board should be dismissed, with prejudice, pursuant to the Court's screening authority under § 1915(e)(2).

2. Hawkins' claims against Senz, Wiltanger, Webster, Shahada, Anderson, Obeng, Mahalski, and Rockwood should be dismissed, without prejudice, pursuant to Fed. R. Civ. P. 20(a)(2). If Hawkins wishes to pursue those unrelated claims in federal court, she should be directed to file separate § 1983 actions and pay the filing fee for each case.

3. Hawkins' deliberate indifference claim against Brown and Sommosky and her retaliation claim against Edwards, outlined at ECF No. 61 pages 29-32, 65-66, and 72, should be permitted to proceed at the current case number. However, Hawkins should be directed to file an amended pleading as to those claims within a reasonable time after the adoption of this Report.

IV.  Notice

In accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72, the parties may seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. *See* Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. *See Brightwell v. Lehman*, 637 F.3d 187, 194 n.7 (3d Cir. 2011); *Nara v. Frank*, 488 F.3d 187 (3d Cir. 2007).

DATED this 28th day of January, 2026.

SUBMITTED BY:

/s/ Richard A. Lanzillo
RICHARD A. LANZILLO
Chief United States Magistrate Judge